IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAY ANTHONY NOTTINGHAM,<br>Institutional ID No. 01490726,<br>SID No. 2416038,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT A. LOVE, *et al.*,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:19-CV-108-Z-BQ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Under Special Order 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. On November 22, 2019, the Court ordered pro se Plaintiff Jay Anthony Nottingham to show cause why sanctions should not be imposed, after significant questions arose over the origin and validity of filings purportedly signed and submitted by Nottingham. ECF No. 32. Having considered Nottingham's response to the show cause order, along with relevant records provided by the Texas Department of Criminal Justice (TDCJ) and the documents on file herein, the undersigned issues the following findings of fact and conclusions of law, and recommends that the District Judge **DISMISS** this action because Nottingham has failed to comply with Federal Rule of Civil Procedure 11.

## I.    Background

On May 16, 2019, Nottingham initiated this 42 U.S.C. § 1983 action. ECF No. 3. Nottingham purportedly signed and filed the original Complaint, alleging multiple claims against numerous defendants. *Id.* The Court subsequently granted Nottingham permission to file an Amended Complaint (ECF No. 23), which is the operative pleading. ECF No. 24. In accordance with *Spears*

1

*v. McCotter*, 766 F.2d 179 (5th Cir. 1985), the Court set an evidentiary hearing for November 21, 2019; however, upon reviewing the file in preparation for the hearing, the Court discovered certain discrepancies in the pleadings. Specifically, due to the documents' purported signature dates and the geographical distance between Nottingham's facility and the courthouse,[1] the Court had doubts as to whether Nottingham signed *each* of the documents on file,[2] in accordance with the dictates of the Federal Rules of Civil Procedure, applicable statutes, and common law. The Court therefore did not conduct the *Spears* hearing, but instead explained to Nottingham its Rule 11 concerns, which Nottingham attempted to address.

Not assuaged, the Court subsequently entered an order to show cause, requiring Nottingham to explain, through written submission, why sanctions should not be imposed for violating Rule 11. ECF No. 32. Further, the Court ordered Nottingham to produce copies of documents (as discussed in detail in the order) in his possession, custody, or control, which necessarily included items kept or maintained by his wife, Nancy Sue Morrison Nottingham (Morrison), who reportedly assisted Nottingham with drafting, preparing, and/or filing documents with the Court. *Id.* at 4. The Court explained that Nottingham should submit documentation "as to *each and every motion, objection, notice, complaint, etc.* that ha[d] been filed with the Court in this action." *Id.* (emphasis added). In addition, the Court directed TDCJ to produce for *in camera* review any mail, telephone, and visitation logs, as well as copies of all incoming and outgoing mail and all communication through JPay or any other electronic messages, to the extent such records existed, for Nottingham between April 2019 and

---

[1] During the relevant time period, Nottingham was incarcerated at either the Texas Department of Criminal Justice (TDCJ) Louis Powledge Unit in Palestine, Texas, or the Wallace Pack Unit in Navasota, Texas, both of which are approximately 500 miles from the federal courthouse in Amarillo, Texas.

[2] As noted in the order to show cause, in addition to the original Complaint (ECF No. 3), Nottingham had filed fifteen documents as of the date of the order—ECF Nos. 6, 7, 10, 13, 14, 15, 16, 18, 19, 21, 22, 26, 27, 28, 30.

November 22, 2019. *Id.* at 5. TDCJ and Nottingham both submitted items for review in response to the order. *See* ECF No. 38.

## II.  Discussion

The Federal Rules of Civil Procedure require that pro se litigants personally sign "[e]very pleading, written motion, and other paper" filed in an action. Fed. R. Civ. P. 11(a). "The purpose of requiring [in Rule 11a] unrepresented parties to sign their pleadings . . . [is] to make certain that those named as parties in an action in which there [is] no lawyer actually [have] assented to the filing of the action on their behalf." *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (quoting 5A Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1334 (2d ed. 1995)).  Where a pro se party's pleading "is tendered and signed by a nonlawyer," however, "then there comes into play the underlying principle [of Rule 11] itself, namely that in federal court a party can represent himself or be represented by an attorney, *but cannot be represented by a nonlawyer*." *Id.* (citing several cases for support) (emphasis added); *see also* 28 U.S.C. § 1654 (providing that in federal court, "parties may plead and conduct their own cases *personally or by counsel* . . ." (emphasis added)).

Moreover, Rule 11(b) provides that upon the signing and filing of a pleading, a party— whether represented by an attorney or acting pro se—makes certain representations to the court, including that:  (1) the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) the pleading presents "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) "the factual contentions [in the pleading] have evidentiary support or, if specifically so identified, will likely have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(1)–(3).

**A. Nottingham's testimony at the November 21, 2019, hearing.**

As discussed above, the Court initially set a *Spears* hearing to develop the facts in this § 1983 action. In preparation for the hearing, however, the Court discovered numerous anomalies in Nottingham's filings which raised the question of whether Nottingham personally signed each document filed. After calling the case and placing Nottingham under oath, the Court explained to Nottingham that due to these irregularities, it intended to issue a show cause order giving Nottingham the opportunity to demonstrate that the filings complied with Rule 11. Tr. 2:26:49–:29:14.[3] Although the Court did not require Nottingham to explain the filings at the November 21 hearing, Nottingham stated that he could "explain right now" if the Court wished. Tr. 2:29:18–:29:22. The Court reminded Nottingham that he was under oath and stated that it did not want Nottingham "to say anything that could possibly incriminate" himself. Tr. 2:29:22–:29:45. Nottingham agreed that he understood and proceeded to discuss some of the concerns raised by the Court.[4] *Id.*

Nottingham initially claimed that he drafted all of the documents filed, either verbally or in writing, and then transmitted the drafts, verbally and/or through the mail, to his wife, Morrison, who word processed the documents and sent them to the Court. Tr. 2:29:50–:30:08, 2:32:55–:35:18, 2:35:58–:38:22, 2:44:23–:49:58.[5] When queried as to how that was possible with the processed and filed documents bearing his signature, Nottingham stated that he signed the documents when he sent

---

[3] Citations refer to the timestamp on the FTR recording of the hearing.

[4] In her Affidavit, Nottingham's wife states that she believes Nottingham was on the verge of experiencing a seizure the day of the hearing. Aff. of Nancy Sue Morrison Nottingham 4–5 ¶¶ 6–7, ECF No. 38-2 [hereinafter N. Nottingham Aff.]. She avers that Nottingham's condition "clearly impacted the results of [the] hearing," as Nottingham's responses "were disjointed and slow" and he "did not go into any detail." *Id.* Nottingham voluntarily provided information to the Court, however, in spite of the Court's statement that he was not required to do so. Tr. 2:29:18–:29:45. Moreover, both Nottingham and Morrison subsequently presented sworn written accounts describing how they prepared and submitted the documents for filing.

[5] Nottingham stated that he ensures the document filed with the Court says what he wants it to say because his wife reads it to him over the phone before sending it. Tr. 2:44:23–:49:58. He further asserted that he was often able to quickly draft documents responsive to a Court order because he anticipated how the Court would rule. Tr. 2:31:19–:47.

4

the notes or drafts to Morrison for word processing. Tr. 2:32:55–35:50. The Court believes an example of this approach is found in Nottingham's Original Complaint filed May 16, 2019. *See* ECF No. 3. The complaint consists of the standard Prisoner's Civil Rights Complaint form, with a number of word-processed pages sandwiched in between that set forth Nottingham's claims. *See id.* The last page of the complaint form is dated May 10, 2019, almost a week prior to its filing date, and bears the purported signature of Nottingham. *Id.* at 35.[6]

The foregoing approach, however, fails to explain or account for how the remaining documents were filed on Nottingham's behalf. In response to specific questioning by the Court, Nottingham adamantly denied pre-dating any of the filed materials. Tr. 2:31:19–:47. When confronted with a clear example of having done so,[7] however, Nottingham then testified under oath that for "some" documents he predates and signs the verification and mailing form, then sends materials to his wife "who types up on her processor and I [have] signed the document already." Tr. 2:34:41–:35:18, 2:44:23–:49:58. His wife then attaches his pre-signed forms (i.e., verification and mailing), which *he claims to have dated when he signed them*, and she submits for filing. *See* Tr. 2:35:19–:50, 2:40:20–:42:31. Nottingham specifically denied that his wife signed any of the documents filed with the Court, stating, "No no, no I sign. . . . That's my signature." Tr. 2:35:19–:50.

---

[6] Page citations to Nottingham's pleadings refer the electronic page number assigned by the Court's electronic filing system.

[7] The Court directed Nottingham to an appeal and request for reconsideration filed November 14, 2019. The unsworn declaration attached to the pleading was purportedly signed by Nottingham on November 12, 2019, but in the document Nottingham stated that he did not receive a copy of the Court's November 8, 2019, order (for which he was seeking reconsideration) until November 13. Tr. 2:44:23–:49.58; *see* ECF No. 30. Nottingham testified that his wife, who maintains a PACER account, learned of the Court's November 8 order the day it was issued and read it to him over the phone. Tr. 2:44:23–:49.58. On November 9, he then "sent [his] work to [his] wife" along with the signature page, which is dated November 12. *Id.* Despite this rather clear evidence, Nottingham continued to deny he had predated the document until finally admitting having done so, after further questioning by the Court. *Id.*

**B. Nottingham's written response to the show cause order.**

In Nottingham's response, which he signed under penalty of perjury, he asserts that he "has violated no rule in" filing pleadings with the Court. Pl.'s Resp. to Show Cause Order 2–3, ECF No. 38 [hereinafter Pl.'s Resp.]. Nottingham claims that because "TDCJ has destroyed or potentially lost [his] mail," he "read to [his wife] over the phone for countless hours complete copies of all of his work. [His wife] took exact dictation and then typed and prepared the notes . . . ." *Id.* at 3–4. Nottingham further avers that he "was able to gain aid to mail these finished and signed documents back to his wife," but he does not specify what he means by this. *Id.* at 4.

Notably, Nottingham contends that "[a]t no time had [he] pre signed and attached any declaration to any court filing," nor "had [his] wife, or any other individual signed for [him]." *Id.* at 7. This assertion conflicts with his statement at the November 21 hearing, when he stated he predated documents, "depending what the document is." Tr. 2:35:58–:38:22. According to Nottingham, "each document was written and read by Plaintiff," and he "[wrote] all of his motions, objections and complaints and had signed the finished work for his wife to copy and file with the Court." Pl.'s Resp. 7. With respect to a motion for continuance, filed November 6, 2019, Nottingham avers that he inadvertently placed the incorrect date on the unsworn declaration attached to the motion. *Id.* at 6–7. He claims that he executed the document on October 24—not October 4. *Id.*; *see* ECF No. 27, at 12.[8] Other than this incorrectly dated document, which Nottingham seeks leave to amend, he claims that "no other document was incorrectly dated nor pre signed."[9] Pl.'s Resp. 7.

---

[8] The motion sought a continuance as to a *Spears* hearing the Court had yet to schedule, until the issuance of an order dated October 16, *almost two weeks after* Nottingham purportedly "signed" the motion.

[9] Nottingham references "two incorrectly dated documents" in his show cause response. Pl.'s Resp. 7. It is unclear, however, what document he claims was incorrectly dated, other than the motion for continuance. *See id.* at 6–7, 10.

In support of his account, Nottingham attached multiple exhibits, including I-60s, an affidavit from his wife, medical information, dictation notes, written communication to his wife, and phone records. *See* ECF Nos. 38-1–38-13. The documents span more than 400 pages (*see id.*), though much of it is not relevant to the issue of whether Nottingham personally signed the documents before the Court. *See, e.g.*, ECF No. 38-1 (copies of medical I-60s and grievances Nottingham filed with TDCJ officials); ECF No. 38-3 (letters Nottingham's wife wrote to an official with University of Texas Medical Branch); ECF No. 38-4 (information printed from WebMD and Wikipedia, among other websites, describing Nottingham's alleged health conditions); ECF No. 38-8 (copy of a general United States Postal Service price calculator and delivery schedule).

In his response Nottingham also provided his wife's affidavit. She dedicates a large portion of her affidavit to discussing Nottingham's medical conditions. N. Nottingham Aff. 4–7, ECF No. 38-2. With respect to the preparation of filings, Morrison asserts that she checks PACER one or two times daily for updates in this action. *Id.* at 10 ¶ 13. When an order is entered, she reads it over the phone to Nottingham, who "begin[s] his preparations and research on the information presented in the new document immediately." *Id.* According to Morrison, Nottingham "reads to [her] over the phone the information to be placed in his pleadings . . . [and] also writes this information in his letters to [her] and sends [her] daily letters containing his preparations and what needs to be typed." *Id.* Morrison avers that she "provide[s] [Nottingham] with blank copies of the unsworn declarations just in case he makes a mistake on one," and after Nottingham "has provided [her] with the complete document, [she] type[s] and prepare[s] the finished document, read[s] it to him over the phone and send[s] it to him for his final approval, attachment of the declarations, certificate of mailing and his signature." *Id.* Morrison denies that she has "ever signed [Nottingham's] name to any of the pleadings filed with this Court." *Id.* As also argued by Nottingham, Morrison states that "the TDCJ

7

prison mail system is so slow and has proven to be very undependable as numerous letters sent both from [Nottingham] to [her] and from [herself] to [Nottingham] have been lost, misplaced and never received or finally arrive weeks to months later." *Id.* at 13 ¶ 17.

Morrison reiterates in closing that she "[has] never signed any of the pleadings submitted to this Honorable Court nor [has she] done the research and preparation of these pleadings." *Id.* at 16 ¶ 20. She asserts that Nottingham "has done all of the research, preparation and writing of these pleadings," and he made "the final decision of what was included in each and every pleading . . . and approved any changes made to the pleadings before they were put into the final copy, sent to him, read and approved by him and most importantly signed by him and only him." *Id.* Morrison corroborates Nottingham's averments, stating that she "[has] never received any pre-signed unsworn declarations to be attached to any documents before [she] placed them in the mail and sent them to be filed by the clerk of this court." *Id.*

### C. Filings before the Court.

As of the date of the show cause order, Nottingham had filed sixteen documents with the Court. *See* ECF Nos. 3, 6, 7, 10, 13, 14, 15, 16, 18, 19, 21, 22, 26, 27, 28, 30. Nottingham purportedly signed each of the documents, and almost every pleading or motion contains at least one unsworn declaration and "Certificate of Timely Filing," also represented to have been signed by Nottingham. The documents are almost exclusively word-processed, except for Nottingham's signatures, as well as some information on the Complaint and Amended Complaint and a few hand-written dates. To provide the proper context for analysis, the Court briefly discusses a sampling of the foregoing filings:

- ECF No. 6: "Objection" filed July 17, 2019. Page 7 is the last page of the word-processed pleading, with a typed page number at the bottom and purportedly signed by Nottingham. Page 13 is an unsworn declaration, with a word-processed date of July 16, 2019, and purportedly signed by Nottingham. Page 14 is a "Certificate of Timely Filing," stating in word-processed format "that on 16th Day of July, 2019, the foregoing document was timely filed . . . by USPS Priority Mail . . ." and allegedly signed by Nottingham. Pages

15–16 contain a word-processed letter to the Clerk directing how the pleadings should be filed (ECF Nos. 6 and 7 were mailed in the same envelope). The letter is dated July 16, 2019, and allegedly signed by Nottingham. Page 17 is a postmarked envelope dated July 16, 2019, *mailed from Wheeler, Texas.*

- ECF Nos. 7, 10, 13, 14, 15, and 16 similarly contain certificates of timely filing purportedly signed by Nottingham on the same day that the document was mailed, as reflected by the postmarked envelopes. According to the postmark, the documents were mailed from either Wheeler or Shamrock, Texas.

- ECF Nos. 21 (Motion to Amend Complaint with proposed amended complaint attached) and 22 (Brief in Support): Filed September 30, 2019, and Court granted motion to amend on October 16, 2019 (ECF No. 23); Amended Complaint docketed the same day as motion granted (ECF No. 24). Page 3 of the Motion (ECF No. 21) is the last page of the word-processed pleading, with a typed page number at the bottom and purportedly signed by Nottingham. Page 4 is an unsworn declaration, with a word-processed date of September 23, 2019, and purportedly signed by Nottingham. Pages 1 and 34 of the Brief (ECF No. 22) are both word-processed pages allegedly signed by Nottingham. Page 35 is an unsworn declaration, with a word-processed date of September 23, 2019, and page 36 is a "Certificate of Timely Filing," with a word-processed date of September 30, 2019, both purportedly signed by Nottingham. Page 38 is a second unsworn declaration, with a hand-written date of September 30, 2019, and purportedly signed by Nottingham. These documents were apparently *hand-delivered to the Clerk's Office for filing on September 30. See* ECF No. 22, at 36.

- ECF Nos. 27 (Motion for Continuance) and 28 (Appendix): Filed November 6, 2019. Pages 1 and 10 of the Motion (ECF No. 27) are both word-processed pages allegedly signed by Nottingham. Page 11 is a "Certificate of Timely Filing," with a word-processed date of November 5, 2019, and page 12 is an unsworn declaration with a word-processed date of October 4, 2019; both documents are allegedly signed by Nottingham. Page 13 is a postmarked envelope dated November 5, 2019, and *mailed from Wheeler, Texas.*

**D. Nottingham's failure to sufficiently establish he signed the documents presented to the Court requires imposition of sanctions.**

Nottingham has failed to demonstrate compliance with "[t]he heart of Rule 11 . . . [i.e., that] . . . signing . . . a document . . . certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542–43 (1991) (citation omitted) (emphasis added); *see* Fed. R. Civ. P. 11(a) ("[e]very pleading, written motion, and other paper" filed must be signed personally

9

by the unrepresented party); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988) (explaining that, "[l]ike a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document"—"impos[ing] a standard of good faith and reasonable investigation as of the date of that signing"); *Johnson v. Tuff N Rumble Mgmt., Inc.*, No. Civ.A. 99–1374, 2000 WL 622612, at *6 (E.D. La. May 15, 2000) (noting that "[w]hen an unrepresented party submits a pleading to the court, he certifies to the best of his knowledge, information, and belief" that he has, inter alia, "conducted a reasonable inquiry into the factual allegations and denials which support the pleading," which is assessed "at the time he submitted the pleading or motion").

Nottingham's account as to how he has prepared and filed the documents submitted in this case, as presented through his November 21 hearing testimony and show cause response (including his wife's affidavit), has evolved as the Court has probed deeper into his explanation. None of his explanations, however, shows compliance with the intent and spirit of Rule 11, and the evidence presented leads to the inevitable conclusion he did not sign most, if not all, of the materials filed with the Court, thus requiring dismissal of his case.

According to Nottingham's initial account, he drafted all documents filed with the Court, either verbally or in writing. Pl.'s Resp. 7; Tr. 2:29:50–:30:08, 2:32:55–:33:34. He then transmitted the drafts, verbally and through the mail, to his wife, who word processed the content. Pl.'s Resp. 3–4; Tr. 2:32:55–:35:18, 2:35:58–:38:22, 2:44:23–:49:58. Nottingham's explanation concerning the next step in the process is conflicting. At the hearing, Nottingham initially denied predating any forms or signatures (Tr. 2:31:19–:47); however, when asked to explain what appeared to be a clear example of providing a signature with a future date for a document yet to be created, he later testified that in some instances he had already signed and predated certain documents sent to Morrison. Tr.

2:44:23–:49:58; *see also* Tr. 2:29:50–:30:08 ("I read all these documents or write these documents to my wife who types them up.  I sign the documents previously to this."); Tr. 2:32:55–:35:18.  He further stated that Morrison "sent [him] a series of certified services" that he "would sign . . . to go along with what she would type." Tr. 2:40:20–:42:31.  Later at the hearing, Nottingham again advised that Morrison "had sent [him] copies of [the certificates of service] already and [he] sent those" with the signed document to her.  Tr. 2:35:19–:50.  Nottingham also alleged that *he* dated the documents filed with the Court.  Tr. 2:35:58–:38:22.

But in his written show cause response, which he also provided under oath, Nottingham asserts that he "signed the finished work for his wife to copy and file with the Court."  Pl.'s Resp. 7.  Nottingham did not specify what the "finished work" constituted, although the Court construes this as being the final document filed with the Clerk, as more specifically described in Morrison's affidavit discussed below.  Equally significant is Nottingham's averment that "[a]t no time had Plaintiff pre signed and attached any declaration to any court filing."  *Id.*

Morrison's affidavit, offered in further support of Nottingham's position, provides more detail concerning how Nottingham allegedly prepared and submitted documents.  According to Morrison, after word processing the documents (based upon Nottingham's written notes or drafts and what he dictated over the telephone), she "type[s] and prepare[s] the finished document, read[s] it to [Nottingham] over the phone and send[s] it to him for his final approval, attachment of the declarations, certificate of mailing and his signature."  N. Nottingham Aff. 11 ¶ 13.  Morrison then claims she mailed the final, word-processed document to Nottingham for his review and signature.[10]

---

[10] Neither at the November 21 hearing nor in his sworn show cause response does Nottingham overtly state that Morrison mailed the final copies to him for signature.  *See* Tr. 2:25:19–:50; Pl.'s Resp. 7; *see also* Pl.'s Resp. 5–6 (explaining that in response to Court's denial of motion for continuance, "he prepared and signed the finished copy and sent it immediately on November 8, 2019, which was the same day [the order was entered], to his wife" but not specifying how that was possible given the word-processed format and the fact his wife would have had to mail him the final copy for signature).

*See id.* Importantly, Morrison corroborates one aspect of Nottingham's explanation, stating that she "[has] never received any pre-signed unsworn declarations to be attached to any documents before [she] placed them in the mail and sent them to be filed by the clerk of this court." *Id.* at 16 ¶ 20. Nottingham and Morrison both expressly deny that Morrison signed any of the documents for Nottingham. Tr. 2:35:52–:58; Pl.'s Resp. 7; N. Nottingham Aff. 11 ¶ 13.

Other than the foregoing testimonial description, Nottingham has provided no physical evidence verifying or corroborating how this elaborate, and time-consuming, process purportedly worked. Although Nottingham produced some postmarked envelopes reflecting that he sent letters and case-related notes to Morrison, he supplied no documentation showing that Morrison ever mailed him anything. *See* App. ECF Nos. 38-7, 38-10. That is, Nottingham did not submit any documentation—through receipts, postmarked envelopes, notes, drafts, etc.—demonstrating that Morrison mailed completed, word-processed documents to him for signing. *See id.* Similarly, TDCJ provided incoming and outgoing mail logs for Nottingham from April 2019 through November 22, 2019, while he was housed at both the Powledge and Pack Units. The logs do not reflect that Nottingham received a single piece of mail from Morrison. Thus, other than Morrison's assertion that she mailed word-processed, completed documents and blank unsworn declarations for his signature, Nottingham has wholly failed to provide any tangible proof showing that Morrison in fact mailed him the final documents for review and signature.

As presented, Nottingham's explanations present a Gordian knot that the Court has struggled to unravel in an effort to determine whether he has satisfied Rule 11—did he in fact sign the items on file herein, *after* they were completed and finalized, and appropriately certify their content? After careful review of the record, the Court concludes the evidence not only contradicts Nottingham's account but affirmatively refutes it.

Almost all of Nottingham's filings contain his purported signature in at least three locations: (1) at the end of the motion or pleading; (2) on an unsworn declaration attached to the motion or pleading; and (3) on a certificate of timely filing. All of the unsworn declarations and certificates of timely filing are dated and bear Nottingham's purported signatures, while some of the actual motions and pleadings are signed but undated. *See, e.g.*, ECF No. 7, at 3; ECF No. 16, at 5. Nottingham has provided no evidence explaining how the signature and filing dates reflected in the record are possible, without pre-dating signature pages on uncompleted documents or having someone else sign his name after the document is finalized. As highlighted above, the majority of documents contain Nottingham's purported signature on word-processed documents with word-processed dates *coinciding with the date the document was either mailed or filed in the Texas Panhandle, almost 500 miles from Nottingham's location.*[11] *See* ECF No. 21, at 3–4; *see also* ECF No. 6, at 7, 13–16; ECF No. 7, at 3–7; ECF No. 10, at 4–6; ECF No. 13, at 7–9; ECF No. 14, at 9–11; ECF No. 15, at 4–6; ECF No. 16, at 5–7; ECF No. 18, at 52–53 (unfiled); ECF No. 19, at 1, 135–37 (unfiled); ECF No. 22, at 1, 34–36, 38; ECF No. 27, at 1, 11–12; ECF No. 28, at 12; ECF No. 30, at 12–15, 28, 35.

When specifically asked by the Court how this was possible, Nottingham initially denied predating any filings, then stated he did predate "some."[12] Though this set-up offers the only possible explanation for how Nottingham's purported signature appears on documents contemporaneous with their mailing or filing date, it fails for multiple reasons. He first stated that he signed and predated the documents, then returned them to Morrison for word processing, compiling, and filing. *See, e.g.*,

---

[11] At the hearing, Nottingham testified that he dated the documents filed with the Court. Tr. 2:35:58–:38:22. Based on Nottingham's averment that his wife word processed the documents, and given the fact that the dates on all documents filed with the Court are almost exclusively word-processed, the Court finds this to be impossible.

[12] Nottingham has contradicted his testimony in this regard multiple times and reverted back to his original hearing testimony, stating in his response that "[a]t no time had [he] pre signed and attached any declaration to any court filing." Pl.'s Resp. 7.

13

Tr. 2:32:55–:35:50. This is not possible for at least two reasons. First, the dates are not handwritten—they are word-processed. *See, e.g.*, ECF No. 6, at 13–14; ECF No. 21, at 4; ECF No. 22, at 36. According to Nottingham, he cannot type and instead sends the materials to Morrison for word processing. Tr. 2:34:41–:35:50, 2:35:58–38:22. More significantly, this scenario fails to explain how Nottingham's purported signature appears on word-processed documents where the signature page actually contains substantive content from the pleading or motion. Stated alternatively, Nottingham clearly could not have signed the document's last substantive page in advance (which also contained the signature line) because Morrison had yet to word process Nottingham's notes or dictation into the final motion or pleading. *See, e.g.*, ECF No. 6, at 7 (Objection to Magistrate Judge's Order); ECF No. 13, at 7 (Objection to Magistrate Judge's Order); ECF No. 21, at 3 (Motion to Amend Original Complaint).[13]

Morrison's affidavit not only confirms the foregoing but also unquestionably disproves Nottingham's proffered explanation, i.e., that he signed predated forms or signature pages in advance that Morrison subsequently attached to his word-processed pleadings *after* she completed them and, presumably, contemporaneously filed or mailed them. Despite testifying that Nottingham "has done all of the research, preparation and writing of these pleadings," and made "the final decision of what was included in each and every pleading . . . and approved any changes made to the pleadings before they were put into the final copy, sent to him, read and approved by him and most importantly signed by him and only him," Morrison also unequivocally states that she "[has] never received any pre-signed unsworn declarations to be attached to any documents before [she] placed them in the mail

---

[13] In addition, as noted by Morrison in her affidavit, such a system would be virtually unworkable given that "the TDCJ prison mail system is so slow and has proven to be very undependable as numerous letters sent both from Jay to me and from myself to Jay have been lost, misplaced and never received for finally arrive weeks to months later . . . ." N. Nottingham Aff. 13 ¶ 17. Nottingham also attests that "TDCJ has destroyed or potentially lost [his] mail," including that "sent to his wife . . . ." Pl.'s Resp. 3–4.

and sent them to be filed by the clerk of this court." N. Nottingham Aff. 16 ¶ 20. In other words, Morrison allegedly filed the document in question only after she word processed it, mailed it to Nottingham for his review and signature, and then subsequently received it back from Nottingham. *See id.* at 11 ¶ 13.

The Court has previously listed the majority of problematic filings herein; however, the following presents a particularly glaring example. Nottingham's brief in support of his Amended Complaint (ECF No. 22), which was docketed September 30, 2019, contains a "Certificate of Timely Filing" that "certif[ies] that on this 30th Day of September, 2019, the foregoing document was filed with the Clerk of the United States District Court for the Northern District of Texas, Amarillo Division by personal delivery . . . ." ECF No. 22, at 36. This statement, including the date, is entirely word-processed, and the certificate is purportedly signed by Nottingham. *Id.* Nottingham could not have signed this document on September 30 and hand-delivered it to the Amarillo Clerk's Office the same day. Similarly, Nottingham could not have signed and dated (on the 30th) the "Unsworn Declaration" attached to the brief. ECF No. 22, at 38 ("declar[ing] under penalty of perjury that the foregoing document is true and correct"). This is clearly impossible, particularly where Morrison (and Nottingham, in portions of his sworn testimony) expressly denies attaching predated signature forms to documents filed on Nottingham's behalf.

One further example should suffice—Nottingham's attempt to amend his complaint in July 2019. According to the USPS Priority mail envelope in which the motion and proposed amended complaint arrived at the Clerk's Office, they were mailed from Wheeler, Texas, on July 23, 2019 (showing a return address for Nottingham in Shamrock, Texas, although he was then incarcerated at the Powledge Unit). ECF No. 10, at 7. The unsworn declaration attached to the motion for leave (attesting to its veracity) is dated July 22, while the certificate of timely filing (verifying that the

motion was "filed" with the Clerk via USPS Priority mail) is dated July 23, with both bearing Nottingham's purported signature. *Id.* at 5, 6. More problematically for Nottingham, the proposed Amended Complaint bears a handwritten date of July 23 and two purported signatures of Nottingham, one indicating the complaint was "[e]xecuted on: 7-23-2019" and the other declaring under penalty of perjury that, inter alia, "all facts presented in this complaint and attachments thereto are true and correct . . . . Signed this 23 day of July, 2019." *Id.* at 67. Other specific examples of similarly impossible timing exist in most, if not all, the representative filings listed at pages 8–9 herein.

Based on the record presented by Nottingham, the "snapshot" of when the picture was taken for determining whether the placement of his signature on the documents, for ensuring compliance with the elements of Rule 11 (*see Thomas*, 836 F.2d at 874), occurred on the dates simultaneous with the documents' mailing or filing over 500 miles from his physical location. Nottingham has provided no evidence explaining how this is possible, i.e., that he reviewed and signed the *final* documents upon their presentation to the Court through mailing or hand delivery. For reasons already fully explained, the record evidence does not support Nottingham's initial account that he pre-signed "some" documents (prior to their being word processed by Morrison). Moreover, the person tasked with compiling Nottingham's drafts, oral dictations, etc., expressly stated that she did so and returned the finished documents to Nottingham for review and signature, whereupon they were returned to her for filing or mailing. Both Nottingham and Morrison then, under oath, expressly denied that he "pre signed and attached any declaration to any court filing" (Pl.'s Resp. 7) or that Morrison "received any pre-signed unsworn declarations to be attached to any documents before [she] placed them in the mail and sent them to be filed by the clerk of this court." N. Nottingham Aff. 16 ¶ 20. Excluding these possibilities, as the Court must on the current record, the only logical conclusion is that someone other than Nottingham signed the documents in question.

While the Court does not base its findings on this factor, it is also noteworthy that Nottingham's purported signatures on the documents filed in this case differ drastically from that on letters sent to Morrison and grievances filed at TDCJ. *Compare, e.g.*, ECF No. 15, at 4–6 (dated Aug. 21, 2019), and ECF No. 24, at 1, 39 (dated Sept. 23, 2019), *with* ECF No. 38-1, at 5 (dated Nov. 11, 2019), 7 (dated Dec. 20, 2019), and ECF No. 38-7, at 113 (undated), 150 (dated May 19, 2019), 183 (dated Aug. 9, 2019); *see also Nottingham v. Warden Bill Clements Unit*, Civil Action No. 2:14-cv-165-J-BB, ECF No. 3 (N.D. Tex. July 23, 2014) (Nottingham signed the original Complaint on July 23, 2014, while he was not incarcerated); *Nottingham v. Warden Bill Clements Unit*, No. 15-10163 (5th Cir. June 17, 2015) (Nottingham filed a brief dated June 16, 2015, with the Fifth Circuit while he was not incarcerated.). The signature on the documents filed in this action, however, appear relatively consistent and, based on Nottingham and Morrison's testimony, were signed on dates when Nottingham could not have physically done so. *See, e.g.*, ECF Nos. 10, 15, 24, 26, 27.

The Court acknowledges that Nottingham has supplied some information tending to support his contention that he dictated to his wife what the filings should say and otherwise participated in drafting the substance of the documents. For example, Nottingham submitted phone records reflecting that he and his wife engage in lengthy conversations on the phone each day (*see* ECF No. 38-13), as well as Morrison's dictation notes. *See* ECF No. 38-6. He also provided copies of *some* letters to Morrison containing case citations and pleading outlines. *See* ECF No. 38-7. Morrison's dictation notes and Nottingham's letters, however, are incomplete. Many of Nottingham's letters appear to relate to cases other than this one (*see, e.g.*, ECF No. 38-7, at 62, 92–113, 172–83), and Morrison's dictation notes are not all related to this action and are surprisingly sparse given the volume of information Nottingham's documents contain. *See, e.g.*, ECF No. 38-6; *see also* ECF No. 22 (Nottingham's brief in support of his Amended Complaint spans approximately twenty-five word-

17

processed pages.). Even accepting as true Nottingham's assertion that he drafted or dictated each word in the documents, however, Nottingham has ultimately failed to establish that he reviewed and signed the completed papers, in accordance with the dictates of Rule 11, *after* Morrison word-processed them.

Based on the foregoing, the Court finds that Nottingham has not demonstrated that he signed all, or even any, of the documents submitted herein in accordance with Rule 11's requirements. Although Nottingham has offered proof that, to some degree, he contributed to the drafting (via research, wording, etc.) of documents, the conclusion is inescapable that someone other than Nottingham was signing the documents on his behalf, in violation of Rule 11(a) and well-established Fifth Circuit law prohibiting non-attorneys from representing others. *See Gonzales*, 157 F.3d at 1021. Not only does Nottingham's conduct violate Rule 11(a), "[f]iling forged pleadings with the court constitutes presenting a pleading for an improper purpose and in bad faith, in violation of Rule 11(b)." *See, e.g.*, *Smith v. Bruster*, 424 F. App'x 912, 915 (11th Cir. 2011). Similarly, by signing and filing documents, a party represents that the factual contentions have evidentiary support and the claims are warranted by existing law. Fed. R. Civ. P. 11(b)(2)–(3). Because the record shows Nottingham could not have signed most, if not all, of the documents based on their date of execution, thereby requiring someone else to have placed his signature thereon, Nottingham—the plaintiff to this litigation—did not certify that the pleadings were well-grounded in fact and legal support. Further, the Court has serious doubts as to whether Nottingham was fully aware of the contents of the filed documents *before* they were submitted to the Court because Morrison prepared and someone other than Nottingham signed them. This conduct similarly violates Rule 11(b). *See Am. Airlines, Inc. v. Allied Pilots Assoc.*, 968 F.2d 523, 529 (5th Cir. 1992) (explaining that there are three ways in which "a pleading, motion or other paper may offend . . . Rule [11]: inadequate legal support, inadequate factual support and

18

improper purpose"); *Stipe v. Smith*, Civil Action No. 10–0576–BAJ–CN, 2011 WL 2975502, at *2 (M.D. La. July 7, 2011) (citing *Childs v. State Farm Mut. Auto. Ins.*, 29 F.3d 1018 (5th Cir. 1994)) (providing that when a pro se party files a signed pleading, "he certifies to the best of his knowledge, information, and belief that the pleading is not interposed for any improper purpose and that [he] . . . has conducted a reasonable inquiry into the factual allegations and denials which support the pleading"), *R. & R. adopted by* 2011 WL 2941311 (M.D. La. June 21, 2011).

In sum, Nottingham's conduct "transcends mere negligence." *Lewis v. Sheriff's Dep't Bossier Par.*, 478 F. App'x 809, 818 (5th Cir. 2012)). The Court finds that Nottingham's contumacious conduct and deliberate disregard for the Federal Rules compels sanctions in this case, and it therefore turns to a discussion of the appropriate sanctions.

**E. Appropriate Sanctions**

"Once a Court finds that counsel or an unrepresented party has violated Rule 11, the Court has discretion to impose an appropriate sanction." *Stipe*, 2011 WL 2975502, at *3. Courts may impose a variety of sanctions under Rule 11, including "striking the offending paper," "issuing an admonition," "ordering a fine payable to the court," or dismissing a claim or the case. *See* Fed. R. Civ. P. 11(c)(4) & advisory committee's note to 1993 amendment. The sanction imposed should, however, "be the least severe sanction that adequately furthers the purpose of the Rule." *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1194 (5th Cir. 1996). And courts should bear in mind that "the purpose of Rule 11 sanctions is to deter rather than to compensate." Fed. R. Civ. P. 11(b) & (c) advisory committee's note to 1993 amendment. In determining whether sanctions are appropriate under Rule 11, courts should consider the following: "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern or activity, or an isolated event; whether it infected the entire pleading . . . ; whether the person has engaged in similar conduct in other litigation;

19

. . . whether the responsible person is trained in the law;" and "what amount . . . is needed to deter that person [and other litigants] from repetition . . . ." *Id.*

In addition to sanctions under Rule 11, the court "has inherent authority to sanction parties for violations of procedural rules or court orders, up to and including dismissals with prejudice." *Smith*, 424 F. App'x at 914 (internal quotation marks omitted); *see Scaife v. Assoc. Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996). "[T]he threshold for the use of inherent power sanctions is high," and should "be exercised only if essential to preserve the authority of the court." *Scaife*, 100 F.3d at 411 (citations omitted).

Here, the Court advised Nottingham that it had "serious doubts as to whether [he] signed each of [the filed] documents in compliance with the Federal Rules of Civil Procedure as well as statutory and common law." ECF No. 32, at 1–2. The Court provided Nottingham the opportunity, through the November 21, 2019, hearing and written submission, to explain discrepancies in the filings. The Court cautioned Nottingham in its November 22, 2019, order that his failure to sufficiently show cause could result in the imposition of sanctions, including a monetary sanction or dismissal of this action without prejudice. ECF No. 32, at 4–5.

Under the circumstances presented, the undersigned finds that the least severe, but necessary sanction to deter Nottingham and other litigants from future similar conduct, is dismissal without prejudice. Nottingham committed numerous willful violations of Rule 11 with multiple submissions over a five–month span, filing at least fifteen documents with forged signatures (i.e., almost every document before the Court), and denied that he engaged in such conduct, despite providing little documentation or evidence to support his contention. The Court acknowledges that dismissal— whether with or without prejudice—is a harsh sanction. "Nonetheless, it is proper for the trial court to impose a severe sanction where the sanction is sufficient to deter repetition of the misconduct or

to deter similar conduct by third parties." *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (citing Fed. R. Civ. P. 11(c)(2)); *see also Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441–42 (5th Cir. 2016) (noting that "to dismiss with prejudice, [the Fifth Circuit] usually require[s] the presence of an aggravating factor, which includes the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct" (internal quotation marks omitted)). Indeed, "[f]orgery of another individual's name on a legal document is a very serious matter, regardless of whether that individual is in agreement with the contents or ultimate purpose of the document." *Smith v. Bruster*, 2010 WL 1407763, at *2 (N.D. Fla. Mar. 3, 2010), *R. & R. adopted by* 2010 WL 1407722 (N.D. Fla. Apr. 5, 2010), *aff'd*, 424 F. App'x 912. Falsifying signatures "is contrary to the spirit and the letter of the Federal Rules of Civil Procedure." *Id.*

The Court further recognizes that dismissal, even without prejudice, likely prevents Nottingham from bringing some of his claims again because he would be barred by the statute of limitations. Any dismissal therefore operates as a dismissal with prejudice. *See Nottingham*, 837 F.3d at 441–42 (providing that when the statute of limitations prevents a party from refiling his case, the appellate courts review dismissals without prejudice under the same standards as that of a dismissal with prejudice). Lesser sanctions, however, would not remedy the willful nature of Nottingham's flagrant Rule 11 violation. Monetary sanctions in this action would be futile. Nottingham is no longer incarcerated (ECF No. 41); the Court would have no way to collect such a monetary sanction. *See Lancon v. Stafflink, Inc.*, Civil Action H-18-2051, 2019 WL 1046951, at *3 (S.D. Tex. Feb. 5, 2019) ("The court is not convinced that monetary sanctions would have any effect, considering [plaintiff's] *pro se* status."), *R. & R. adopted by* 2019 WL 1040980 (S.D. Tex. Mar. 5,

2019); *see also Lewis v. Sheriff's Dep't Bossier Par.*, 478 F. App'x 809, 818 (5th Cir. 2012) ("Because Lewis was proceeding IFP, any monetary sanctions would have been fruitless."). Nor would a monetary sanction cure the forged signatures on all documents before the Court. In other words, if the Court were to merely recommend assessment of a monetary sanction but nevertheless continue screening of Nottingham's claims, such sanction would do nothing to deter Nottingham (or other pro se litigants in his position) from providing forged documents.

Similarly, simply having Nottingham ratify—through resigning—each forged document does not remedy the fact that a nonlawyer originally tendered documents on his behalf. *See Smith*, 2010 WL 1407763, at *2 (recommending prisoner's § 1983 case be dismissed without prejudice where he forged co-plaintiff's (his wife's) signature on response to motion to dismiss). But even if ratifying could remedy the apparent forgery, "no signing or ratification . . . *after* expiration" of the statute of limitations or applicable time periods under the Federal Rules and Local Rules "can be effective." *Gonzales*, 157 F.3d at 1022 (distinguishing between "the situation where a nonlawyer signs the notice of appeal on behalf of another from that where the appellant named in the notice submits it, unsigned, to the clerk, observing that the former situation, but not the latter, is governed by the rule that a layperson cannot represent other persons in filing a notice of appeal" (internal quotation marks omitted)). Stated differently, any ratification—although Nottingham has not offered to do so—would be effective as of the present date, not the date a nonlawyer initially signed the documents on his behalf. *See id.* Thus, many of Nottingham's claims would be time-barred even absent dismissal.

In sum, Nottingham engaged in intentional conduct and, as a pro se litigant, is personally responsible for his failure to comply with Rule 11. Because Nottingham's "conduct has threatened the integrity of the judicial process," the Court finds that it is left with no choice but to recommend dismissal of this action. *McNeal v. Papasan*, 842 F.2d 787, 790 (5th Cir. 1988) (citing *Rogers v.*

*Kroger*, 669 F.2d 317, 321 (5th Cir. 1982)); *see, e.g.*, *York v. Anderson*, Civil Action No. 4:05-CV-659-Y, 2006 WL 1867896, at *1 (N.D. Tex. July 5, 2006) (dismissing without prejudice pro se prisoner's § 1983 complaint after he provided false information, finding that "[a]ny sanction short of dismissal of the case would enable an informa-pauperis [sic] litigant . . . who has provided false information, to nevertheless gain his desired review of the newly submitted claims").

### III.    Recommendation

Because Nottingham has failed to demonstrate he complied with Fed. R. Civ. P. 11 in prosecuting this action, and because he has engaged in contumacious conduct, the undersigned recommends that the United States District Court dismiss Nottingham's Amended Complaint and all claims therein without prejudice.

### IV.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 20, 2020

_____

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**